The next case will be 061375 Optrex America Inc. v. United States May it please the court, my name is Steven Sonnenberg. I'm counsel to the plaintiff Appellant Optrex America Inc. and I'm accompanied this afternoon by my colleague Mr. Jason Cunningham. We are requesting remand at the court below with direction that it apply a straight GRI-1 legal analysis to the products which were the subject of the trial before it. Classification in accordance with the appropriate statutory language should proceed first to GRI-1 which directs us to the headings and chapter notes. Section 16 note 1m directs the reader to chapter 90. Chapter 90 notes 2a and b then proceed to divide products in question into three categories. Note 2a sends goods which in our view would be those goods or products which contain drivers and modules back to section 16 for further analysis. Note 2b directs that those goods which are suitable for use solely or principally with a particular kind of machine also go back to section 16 for further analysis. These two notes are fairly limited in their scope. Finally those panels which are not covered under either note 2a or 2a above would remain in chapter 90 and fall to heading 90.13 in our view. At this point the sharp analysis ends. In other words the applicability of the sharp case now diverts. Section 16 note 2. You're saying what you just laid out is consistent with sharp? Yes I am. Because sharp, I read it and it struck me as a simpler approach than what you've laid out. We've done everything possible to make our position consistent with sharp. I believe the court in sharp, both the court below and this court, first looked at the product in question and decided whether or not it would be eliminated by head notes 2a or b. And thereby pushed on to another part of the statute or whether those products ought to be classified because they were not eliminated by 2a or b under heading 90.13. Now I'm not sure it was all quite as explicit as I've just described it but I think that analysis is consistent with our view of the way the statute should be read. You're saying there's a simple solution to the tariff schedule? There is nothing simple about this part of the tariff schedule. Certainly I've spent a lot of time digging through the tariff schedule and this is a complex portion of it. If there is a simple one you can let us know. Well you can always do it our way. We feel that the court below, which is to say the trial court in sharp, made a modest error in that they went directly to a relative specificity analysis early on. I think that the appellate court pointed that out and said that it was really quite unnecessary. In the context of the sharp case, that did not change the outcome. We're dealing with a single product. This case differs quite radically from the sharp. Sharp had a single product. It was a plain glass panel which was suitable for a particular purpose. In this case we have some 200 different products, all of which differ quite substantially from the product of the subject of the sharp. Well they can be used in different types of products though, can't they? Yes. Our client has a very dynamic product line. We've tried to frame our case in such a way as to get some guidance as to the proper classification. We try to get it as broad as possible. If it is a broad product line, wouldn't it be better to be classified in the general heading rather than be specific as to a particular use? Is there some logic to that? There are a lot of places I'd like to see it, but I don't think we can reasonably deviate from the statutory language. I think the statute requires us to go this route. We're required to stay within GRI 1 if we can do that. I don't think the statute leaves any room in that area. Let's assume you've got 10 different products. They can be used in 10 different applications. You have a heading which talks about one application, but not the other 9 applications. Under the tariff schedule, wouldn't it be best just to put it under the general heading of the 10 that covers 10 rather than just the one that covers a specific use? Depending upon the nature of the product, that certainly is true. Isn't that the case here? I don't believe that's the case here because the products in question are described, and I believe all parties involved would agree, and certainly we have deposition testimony from the Customs Commission. They can be described in all three tariff classification, tariff heading. And because of that, we're required by the statute to sort them out, decide which belongs where, I believe. And I believe the statute gives us a proper roadmap for doing that. So if you have 10 different products and you have 3 different headings, you can split those up into specific headings? If we're talking about the gold crystal display products. And where we differ from Ms. Rubin and her client is that we feel the statute frames out proper places for those products. For each individual product? Each group of products, really. Whereas I think the position that the government and the court below have taken is to group the products and then fit them into the statute. So we're taking opposite sides, opposite ways of looking at the product. One great benefit to the approach, which we believe is the correct one, is it eliminates the need for extra statutory tools, such as the so-called 80 character rule, for which we feel no deference is appropriate. There's never been any rulemaking directed to that rule. It's never been the subject of any formal review of any kind. It's not been applied consistently. There used to be a 64 character rule before there was an 80 character rule. And frankly, it doesn't have a place in industry or in the statute. It's just convenient because it fills a gap in both the government and the lower court's statutory analysis. If I understand your position correctly, and it's not a simple area of the law, if we take a group of 10 products and there are three different headings that they could go into, plus a general heading, let's call it, you're saying that we should group the products first and then decide which particular heading it should go into, not the other way around? The other way around? The other way around, yes. Okay. That's what I thought, just to be clear. My apologies. I'm not as clear as I am. No, my misunderstanding, probably. It's important to bear in mind that the products here, I realize I have a minute and a half left, the products here differ very radically from the products in Sharp. Sharp. First of all, Sharp was simply glass panels. In this case, we have a group of modules which have drivers and have complete data processing abilities. There are products like that. There are some panels which could be compared to the Sharp panels in the sense that they are simply flat glass panels. Virtually all of the other panels, which are the subject of this case, have many, many, many custom features, all of which were before the court below. They have icons which commit them to a single application or use. Some of these icons would indicate, for example, the level of fuel in an automobile gas tank. That sort of panel is not going to have an application elsewhere. There's no other place to put it. They have etchings. They're definitely dedicated by size to very precise applications. They have polarized coatings which affect the viewing angle from which they can be used. Some are used outdoors. Coatings are set up to accommodate viewing with the use of polarized sunglasses. The automotive products, in particular, are subject to extremely rigorous ruggedizing procedures. They can really take a beating, and they have to take a beating if they're going to be used non-ruggedly. Some of the specialized cell phone applications also require a very high degree of ruggedizing. I would like to reserve my questions. All right. Ms. Rubin? Good afternoon. May it please the Court. From the length of the trial court's decision, from Judge Schall's original question, from Judge Gaillard's original question, and from Uptrex's arguments, it appears that you might believe that this case is quite complicated. It's not. It's a basic classification case involving very, very common articles of commerce, liquid crystal display panels, liquid crystal display modules. The length of the trial court's decision was based in large part on the fact that there are hundreds of different items at issue. The trial court made findings of fact with respect to the characteristics and capabilities of every single one of these hundreds of items, and where it was disclosed at trial, the court also found the end-use application for those LCDs that had a specific end-use application. The court properly rejected Uptrex's claim that any of the LCDs are properly classifiable as parts of automatic data processing machines, and it was very curious, listening to Mr. Somburg, he never once mentioned Plaintiff's claim in this case. Plaintiff only has a single claim. It was the same claim made by Sharpe in the Sharpe decision, in the Sharpe case, and that is that this merchandise, every single one of these hundreds of items, is classifiable as a part of an automatic data processing machine. Now, Uptrex would have the court, would have had the court- Are they all classifiable in that heading then? Excuse me? Are they all classifiable in the heading of a data processing machine? Not a single one is classifiable as parts of automatic data processing machines. As, in fact, contrary to- Not a single one of their various products? Not as of the LCDs at issue? No, not a single one. And, in fact, there's only two part numbers, and they're almost identical part numbers, that are even used with machines that might qualify as automatic data processing machines. Now, remember, to be a part of an automatic data processing machine, an item would actually have to be incorporated, or destined for incorporation, into a product that is itself classifiable as an ADP machine. As you heard Mr. Sonnenberg state, and as is in the briefs, these LCDs can be used for an infinite variety of applications. Two of them happen to be used with file servers today. Tomorrow they might be used for something else, because those two don't actually happen to have icons. This merchandise is used for many known applications, many unknown applications. But the applications actually don't matter to the analysis to be applied here. And this is not a one-size-fits-all analysis, as Optrex would have you perform, and would have had the CIT perform. In fact, it doesn't appear as if Optrex takes issue with any of the court's factual findings. They've never used the term clearly erroneous. They've never objected to the findings that were made. What Optrex says is the court didn't find enough facts. The court didn't describe enough characteristics of this merchandise. Well, you have to presume that the court actually considered all the evidence, and considered all the characteristics. And in fact, those particular characteristics that Mr. Sonberg just indicated were disregarded by the Court of International Trade actually included in the court's decision, I believe it's finding of fact 187, where those specific characteristics are analyzed as not being relevant to classification. But beyond that, there were 199 findings of fact. Many, many, many of them had specific characteristics of the HLCD, and where, as I indicated, where it was disclosed a specific end-use product. There's no reason why the court, having found that a particular product is used only in odometers, would then have had to say, and it has particular temperature sensitivity, and has this and it has that, which would all go into making it suitable for an odometer. There's no reason to give the whole litany of individual characteristics when the only point that Optrex is trying to make is that they're suitable for a particular product. Optrex also seems to agree, and I believe Mr. Sonberg just conceded, that the court's determination that these LCDs are classifiable in the provisions selected by customs are correct. Optrex's dispute seems to be with the ultimate conclusion that the products are classifiable in the provisions found by customs as opposed to in the provisions for parts of ADP machines. But there's no dispute, apparently, from Optrex that, in fact, these LCDs are covered by the provisions found correct by customs. We vehemently dispute Mr. Sonberg's statement that all of the parties agree that they can be classified under these three headings. That is absolutely incorrect. When the proper analysis is applied, as it was by the Court of International Trade, some of the products are classifiable in heading 9013, some of them are classifiable in heading 8537, but none of them are classifiable in 8473. I think I got those right. There's the control panel heading 2, which is escaping me now. This is not a really difficult case, because to be classifiable as part of an ADP machine, as indicated, an imported article must, at the time of importation, be destined for incorporation into an end-use device that is principally used for processing data and satisfies the conditions of Note 5A to Chapter 84. So let's, for the sake of argument, say that Optrex can show that each of its LCDs is, in fact, suitable for use solely or principally with a particular kind of machine. Optrex would still have to show that the particular machine is classifiable as an ADP machine. But that's under the 5A that would be freely programmable. Sure, that's one of the many conditions, but an ADP machine is principally used for processing data. It's not a device that happens to process data in performing its other duties. An odometer happens to process data in calculating the mileage that car has gone. Would an input keyboard be part of an ADP? I believe there's a separate provision for input units for ADP machines. I'd have to check the tariff, but I do believe there's a separate provision for input and output units. For ADP operations. So I don't think it would be classifiable as a part. I think it's got its own provision. What would be classifiable as part of an ADP? A chip? I don't know. But this wouldn't be. This would not be. So it's by exclusion. I can't think of any examples right now. That's the way we handle classification matters, by exclusion. Well, this is exclusion classification for one thing, because there's actually no evidence presented that any of the end-use articles, except the file servers, are in fact classifiable as ADP machines. But let's assume, for the sake of argument, that odometers, cell phones, inventory scanners, car audio systems, all that is principally used for processing data. Classifiable as ADP machines. Well, generically, they all process data. They do process data, but there's a principal use that needs to be applied here. Because odometers are separately provided for in their own heading. So, yes, they may incidentally process data, but they're really classifiable under the tariff provision for odometers. Same with radio-navigational systems. GPS systems have their own provision. They do process data incidentally. What about an LCD face for a watch that also has a calculator in it? Okay. Would that be classifiable under an ADP? That would be classifiable probably as a watch. It has no ADP function. It's just a calculator. It's a calculator. Calculators, I believe, also have their own... You can input data into it, program it, constants and otherwise. But it doesn't have... It doesn't meet all the requirements of Note 84, and it also doesn't have a principal use as an ADP machine. Is that the actual distinction that's used? It has to have a specific use as an ADP machine? It has to principally be used for processing data. Otherwise, it's a machine that incidentally processes data, but has a principal use as a fish finder, an inventory scanner. Or a GPS. A GPS. There's dozens of identified end uses and an infinite variety of probably unidentified end uses because a lot of these LCDs are for distribution, and Optrex has no idea where they end up. So, assuming that Optrex has actually established that each of its LCDs, contrary to the testimony of its own witness, that each of these LCDs is destined for incorporation or suitable for use solely in a specific type of device, none of these devices were shown to be principal use for processing data, and they don't satisfy the freely programmable, excuse me, capable of being freely programmed in accordance with the needs of the user. Which, by the way, is the equivalent of freely programmable as we indicated in our brief. And Optrex doesn't indicate why freely programmable is actually a stricter standard than what's in the note. It's really just a shorthand way of saying the same thing. Even if Optrex had shown that its LCDs are suitable for use solely or principally with ADP machines, it still can't prevail. What Optrex has done is it's relied on a legal note that it shouldn't have relied on. Note 2A to Chapter 90 and Note 2A to Section 16 of the tariff indicate that an item that is both a part but is also fully described in a specific article unto itself, fully described, has to be classifiable in the particular provision that describes it instead of in the provision for parts of the device into which it will ultimately be incorporated. Optrex relies on Note 2B, but what Optrex doesn't do is it completely ignores the fact that Note 2A, in both of those notes, uses the phrase, parts which are goods, and Note 2B says other parts, meaning very clearly that if Note 2A suffices to determine the classification of a particular product, you never get to Note 2B and you certainly never get to Note 2C. It's sort of like applying the GRIs. If GRI1 suffices, you never get to 2, 3, 4, 5, and 6. So here, Note 2A dictates that if these LCDs are described as goods in particular provisions, even if they can also be described as parts of other devices, parts of odometers, parts of ADP machines, parts of GPS systems, they can't be classifiable as parts of those devices. Here, the trial court correctly found that the provisions found to be correct by customs fully encompass these particular LCDs, either as indicator panels, as control panels, or as liquid crystal devices not specifically provided for in other provisions. I was happy to hear Mr. Sondberg finally concede that some of the panels at issue here are comparable to the panels at issue in Sharp. Actually, all of the panels at issue here are comparable to the panels at issue in Sharp. And you should reject Optrex's attempt to distinguish the merchandise because there really is no distinction. Yes, some of the panels here have etchings, but that does not have etched icons, but that does not render them anything more than basic glass panels that are perfectly analyzable under this court's 1997 decision in Sharp. So there's simply no error that has been pointed out in any of the factual findings. There's been no error pointed out in any of the legal conclusions. And we're a little bit actually surprised that after a five-day trial and deposition testimony and lots of witness testimony and tons of evidence that Optrex is seeking a remand here. There's no basis whatsoever to remand this case to the court that spent a lot of time thinking about this case, a lot of time hearing the evidence, and we respectfully request that you affirm the decision of the court below. Thank you. All right, thank you. Mr. Schellenberg. Thank you. With all due respect, the government's position with regard to the breadth of Heading 9013 we feel is just far beyond what it needs to be. There's no point in this case in disregarding Heading 8531, which is an analysis of that. All of Heading 85 is required by resort to Section 16, Note 2. There's no point in having Note 2B to Chapter 90's Note 2A if it's going to be disregarded. Some of the products, and I hope this was clear in my initial presentation, some of the products we feel the statute sorts the products as opposed to the products sorting the statute. That really is our position. Chapter 90 Notes 2A and 2B each have a place in this case. Note 2A refers to goods, and we would submit to you that that would include products which have drivers and products which are described as modules. Note 2B specifically relates to products which are suitable for use solely or principally with a particular kind of machine. That's a separate grouping of products in this case. The panels which are not thrown back into Section 16, Note 2, by Chapter 90 Notes 2A and 2B fall to Heading 9013. There's no point in having Notes 2A and 2B if Heading 9013 includes everything with LCDs. Our view is that a proper reading of the statute has to take into consideration all of the various elements. An important distinction between this case and SHARP is that SHARP abandoned its position with regard to Heading 8531. That has not been done in this case. Heading 8531 continues to be a viable classification for many of the products which are the subject of this case. If the Court has no further questions, I would yield up the remainder of my time. All right. Thank you very much. Case is submitted.